VERMILYA v. THE CHICAGO, MILWAUKEE & ST. PAUL R'Y CO.

1. **Railroads:** RIGHT OF WAY UNDER DEED: RIGHT TO USE SAND FROM RIGHT OF WAY. Plaintiff conveyed to defendant by a quit-claim deed a "right of way" over certain land, "for all purposes connected with the construction, use and occupation of said railway." *Held* that the deed did not confer upon defendant the right to take sand from the right of way to construct a round-house, because such use of the land was not included in the purpose for which the land was granted, as shown by the terms of the deed. On the other hand, *held* that, as the deed conveyed an easement only, for certain well defined purposes, the plaintiff might take sand from the right of way, so long as he did not interfere with such uses of the land by defendant as were contemplated in the deed. See opinion for an elaborate argument of the case upon the authorities by BECK, Ch. J., and for a statement of the views of ROTH-ROCK J., concurring.

2. **Evidence:** ADMISSION OF: ERROR WITHOUT PREJUDICE. The admission of incompetent evidence to prove what is admitted by the pleadings is error without prejudice.

3. **Railroads:** DESTRUCTION OF MEADOW BY NEGLIGENT FIRE: MEASURE OF DAMAGES. Where the evidence tended to show that plaintiff's meadow was so injured by a fire negligently set out by defendant that the roots of the grass were destroyed, so that the meadow would not produce grass for mowing, *held* that the court properly instructed the jury that plaintiff's measure of damages was the cost of restoring the meadow to as good a condition as it was in before the fire.

*Appeal from Cerro Gordo Circuit Court.*

WEDNESDAY, JULY 22.

ACTION to recover the value of certain sand taken by defendant from plaintiff's land, and for damages sustained by plaintiff by reason of a fire set out by an engine operated upon defendant's railroad. There was a judgment upon a verdict for plaintiff. Defendant appeals.

*George E. Clarke,* for appellant.

*Stanberry & Clark,* for appellee.

BECK, CH. J.—I.  The evidence tended to prove that the

Vermilya v. The Chicago, Milwaukee & St. Paul R'y Co.

sand for which recovery is sought in this action was taken from within the limits of defendant's right of way upon plaintiff's land. It was used in the construction of the engine-house, or round-house, located at the point where defendant's main line of road intersects the branch road passing over plaintiff's land, where the sand was procured. The right of way was by quit-claim deed granted by plaintiff to the Mason City & Minnesota Railway Company, under which defendants acquired it by grant. The language of the deed executed by plaintiff, showing the subject conveyed, is as follows: "We ＊ ＊ ＊ do hereby grant, bargain, convey and quit-claim to the Mason City & Minnesota Railway Company, for all purposes connected with the construction, use and occupation of said railway, the right of way over and through the following described tract or parcel of land: (describing it,) hereby conveying, for the use above mentioned, a strip of land one hundred feet in width across the premises aforesaid, to have its center in the center of the main railway track, on the line that is now located, and on which said railway is to be constructed, together with all necessary width for bermes."

*1. RAIL-ROADS: right of way under deed: right to use sand from right of way.*

The circuit court held, in ruling upon a demurrer to defendant's answer, and in instructions to the jury, that defendant acquired no right under plaintiff's deed for the right of way to take and appropriate the sand for the purpose of building the round-house, and that for the value of the sand used for that purpose defendant is liable in this action. The decision of the court below upon this point of the case first demands consideration.

II. Plaintiff's deed conveys "the right of way" over the land described. The subject granted, the thing conveyed, is described by the words "right of way." The words "for all purposes connected with the construction, use and occupation of said railway" indicate the purposes for which the right of way is to be used, thus lim-

*THE SAME.*

iting the grant. These purposes must be connected with the construction, use and occupation of the road contemplated,— not of any other road. The words "right of way" describe an *easement* upon plaintiff's land, under which the possession of the land may be held. This easement is to be held for all purposes connected with the construction, use and occupation of said railway. Now, the building of a round-house has no connection with the construction, use or occupancy of a railway which could have been within the contemplation of the parties to the deed. It is true that every transaction of the corporation organized to construct, use and operate a railway has some connection with the object of their organization. The building of cars, the erection of depots, warehouses, and the like, are all connected with the use of the railway in some degree. But it cannot be presumed that plaintiff had in contemplation matters of this kind. It would be absurd to suppose that plaintiff, in making the deed, had in contemplation that the easement—the possession of the land granted—would be held for the purpose of enabling defendant to build a round-house at Mason City, St. Paul, or in Dakota. If the easement extended to such work in Mason City, where the round-house was built for which the sand was taken, it would extend to all like work upon defendant's road, without regard to the remoteness thereof. This court has held that the employment of one rendering services at a round-house, demanded by its proper use, is not connected with the use and operation of the railroad. *Malone v. Burlington, C. R. & N. R'y Co.*, 61 Iowa, 326.

Code, § 1241, provides that a railway corporation "may take and hold under the provisions of this chapter so much real estate as may be necessary for the location, construction and convenient use of its railway, and may also take, remove and use, for the construction and repair of said railway and its appurtenances, any earth, gravel, stone, timber or other materials on or from the land so taken." The chapter in which this section is found contains provisions for the con-

demnation of lands for use in the construction of railroads. Here we have, in effect, a statutory definition of the word "use" applied to railroads. We are here informed the "convenient use" of a railroad does not mean the construction of appurtenances thereto. If it does have such meaning, then the grossest tautology is found in the language of the statute. The section, in the first place, provides that land may be taken for the "convenient use" of the railroad, and then declares that materials found upon the land may be used for the construction of appurtenances thereto. The term "convenient use" means the fit, appropriate, advantageous use. The adjective "convenient" does not limit the name "use" so as to make it apply to the actual running of trains upon the tracks. That is done by virtue of the meaning of the word itself. The use of a thing is not the use of an appurtenant thereto. The use of a thing may be convenient, and the use of its appurtenances may be convenient. We discover that the word "use," occuring in the statute, has the same meaning as the same word found in the plaintiff's deed. But, in the statute, the use of a railroad does not mean the use of its appurtenances. Hence, when plaintiff granted the right of way for the use of the railroad, he did not grant it for the uses of appurtenances. A round-house is an appurtenance of the railroad.

Defendant, it may be admitted, by proceeding under the statute to condemn the land, would have acquired the right to use the material found on the land for the purposes of constructing appurtenances to the railroad. But that course was not pursued, and it was content to accept a conveyance granting less. That plaintiff could grant less and defendant accept less, cannot be doubted. We must conclude that it was the intention of the parties that the deed of plaintiff should convey nothing more than the right of way for the use of the road, and not for the use of appurtenances thereof. When a right of way is acquired by *ad quod damnum* proceedings under the statute, the title of the timber, stone, sand,

and the like, found upon the land, remains in the owner, and can be used by the corporation owning the railroad, only for purposes connected with its construction and use. See *Preston v. Dubuque & P. R. Co.*, 11 Iowa, 15; and *Henry v. Dubuque & P. R. Co.*, 2 Id., 288.

III. The defendant, in the third count of its answer, pleaded a counter-claim against plaintiff for sand taken by him from the land occupied by defendant's right of way over his land. A demurrer to this count was rightly sustained. Defendant does not allege that plaintiff interfered with its use and occupancy of the land for the purposes for which it was granted,—the operation of the railroad. It simply complains of the taking of the sand, for the reason that it was conveyed by the plaintiff's deed. While it is alleged that the whole of the strip of land covered by the easement was necessary for the occupancy of defendant in the use of the road, it is not alleged that such use or occupancy was interfered with. We have seen that the deed of plaintiff did not convey the land further than was necessary for these purposes. Defendant held but an easement; the plaintiff retained title to the land subject to the easement. If the sand could be reserved without interfering with defendant's easement, plaintiff, as the owner of the fee, could do it. Defendant's counter-claim does not show that this could not be done. Upon this point see *Preston v. Dubuque & P. R'y Co.*, 11 Iowa, 15, and *Henry v. Dubuque & P. R'y Co.*, 2 Id., 288, above cited.

IV. At the risk of repetition, we will endeavor to state in different language and in another form our conclusions upon the points of the case above considered.: (1) The deed under which defendant claims the land in controversy conveys to it an easement "for all purposes connected with the construction, use and occupation of the railway." (2) All other rights to and interest in the land, except this easement, were reserved by plaintiff. (3) The construction of a round-house is not one of the uses for which

*THE SAME.*

the land was conveyed, and defendant has no easement author-izing it to appropriate the land, or the sand found thereon, to such purposes. That the conveyance of the land "for the construction, use and occupation of the railway" vests in defendant no such authority and right, is made plain by the consideration that in the statute authorizing the condemna-tion of land for the use of railways the word "use" can have no meaning or effect extending it so as to authorize the cor-poration acquiring rights thereunder to appropriate sand, timber, stone or the like. The statute, (Code § 1241,) in express language, other than by the words used in the deed to defendant executed by plaintiff, empowers corporations, under the authority conferred upon them, to exercise the right of eminent domain; to appropriate for the construc-tion and use of railways materials found upon land con-demned by them. No right to make such appropriations is granted by the deed to defendant in this case. It was not, therefore, acquired by defendant. It is obvious that decis-ions involving the right of corporations acquired by virtue of condemnation of land, authorized by statute, conferring authority upon them to take and use timber, sand, stone, and the like, are not applicable to this case. In such cases the railroad companies acquire under the statute something more than the mere easement to use the land for the purpose of constructing and operating their roads; namely, the right to take timber, sand and the like. In this case such easement was conveyed by the deed to defendant, and nothing more.

V. We present below a brief statement of the facts and points ruled in the cases cited as being in conflict with our views, which shows that none of them construes conveyances of the character of the one under which defendant acquired the right of way involved in this case. All of them that in any way pertain to the rights of railroad companies are cases wherein lands were con-demned under statutes. One of them, (*Chapin v. Sullivan R. Co.*, 39 N. H., 564,) it will be observed, supports the con-

clusions we reached in this case.    The others are in no man-
ner in conflict with our views.

*Boston Gas-light Co. v. Old Colony & N. R'y Co.*, 14
Allen, 444.    The plaintiff sought to prevent the obstruction
of a right of way by defendant by the erection of buildings
"within the limits of the location of its railroad."    The fee
of the land occupied by the railroad was in defendant, which
it acquired under its charter.    It was held that plaintiff had
no right to restrain the erection of the buildings.

*Com. v. Inhabitants of Haverhill*, 7 Allen., 523.    It was
held that the authorities of a city cannot lay out a way across
land occupied by a railroad, unless permission to do so has
been granted by the county commissioners.

*Brainard v. Clapp*, 10 Cush., 6.    This was an action to
recover for trees cut down on the right of way of a railroad
in order to remove an obstruction to the view of a track near
a depot.    The land occupied by the railroad was acquired
under the charter of the company and by condemnation, pur-
suant to law.    Held, that the corporation could remove the
trees.

*Chapin v. Sullivan R. Co.*, 39 N. H., 564.    It was held
that stone excavated in constructing a branch railroad, under
a grant, or permissive license of the owners to construct and
use the track upon the land, remains the property of the land-
owner, if not used in the construction of the identical branch
track, and cannot be devoted to any other purpose by the rail-
road company.

*Aldrich v. Drury*, 8 R. I., 554.    Land was acquired by
condemnation proceedings, under the statute, by the railway
company.    It was held that the corporation under this pro-
ceeding acquired the right to use the earth, gravel and stone
needed for the construction and maintenance of the road
within the location, and to carry the same from one point to
another along the road, as such use should demand.

*Taylor v. New York & L. B. R. Co.*, 38 N. J., 28.    The
right of way was acquired by condemnation under the stat-

ute. Held that trees upon the land condemned under the statute could be used in constructing the railroad.

*New York & C. R. Co. v. Gunnison*, 1 Hun., (8 N. Y. Supr. Ct.,) 496. Lands cannot be condemned by a railroad company simply for the purpose of removing gravel therefrom.

*Hasson v. Oil Creek & A. R. R. Co.*, 8 Phila., 556. The defendant acquired right of way under the statute. It was held that plaintiff retained the fee of the land, and had the right to drive pipes under the railroad to convey oil.

*Munkers v. Kansas City, St. J. & C. B. R. Co.*, 60 Mo., 334. Under a relinquishment of the right of way along a section line, it was held that the company would not lose its right for the reason that the railroad was not constructed immediately on the section line. Rights and liabilities as to surface water were involved in the case.

*Smith v. Chicago, A. & St. L. R'y Co.*, 67 Ill., 191-197. Various questions arising under condemnation proceedings are decided. The case does not bear upon the question before us.

*Hurd v. Rutland & B. R. Co.*, 25 Vt., 116. The land was condemned under a statute. It was held that the right of the railroad corporation to the use and possession of the land is exclusive. The land-owner had no right to its use or occupation. Nothing is said about the right of the corporation to take stone, timber, or other material for use on its road for any purpose or any other road.

*Connecticut & P. R. Co. v. Holton*, 32 Vt., 43. Lands were taken by condemnation under the statute. It was held that the land-owner had no right to enter upon or use the land for any purpose which in the least degree endangers or embarrasses its use by the railroad company; as for the removing of turf, which would enhance the danger of cattle getting on the track. The opinion expressly declines to consider the possible case of a land-owner entering " to obtain mines or minerals, or to take herbage or other vegetable

growth." The turf which defendant removed, it was held, was necessary to be retained upon the road in order to prevent dust arising, which would be an annoyance to travelers.

*Troy & B. R. Co. v. Potter*, 42 Vt., 265. The road was surveyed and located, and this, under the charter of the company, was an appropriation or "taking" of the land. The defendant was the president of the railroad company, and testified to certain agreements as to the right he reserved to enter upon the right of way and take herbage. Held that the land was taken by condemnation, under the statute, and that the company acquired all the rights they could acquire by payment of damages to the owner assessed under the statute.

*Burnett v. Nashville & C. R. Co.*, 4 Sneed, 528. A statute provided that the land condemned for use of a railroad shall vest in the company "in fee-simple." Held that the railroad company acquired under the statute an absolute estate in fee-simple.

*Chicago & M. R. Co. v. Patchin*, 16 Ill., 198. Action to recover for cattle and hogs killed by the plaintiff's engines. The case does not show whether the railroad company obtained the right of way by condemnation or by grant. Judge Scates, in the opinion, says, *arguendo*: "I presume the right to the land upon which railroads are built is not strictly analogous to the easement of the public highways, leaving the fee in the owner of the soil, but is an absolute ownership in fee for the railroad purposes, and that characteristic or incident of a public highway has relation alone to the business of the company as common carrier upon it."

*Munger v. Tonawanda R. Co.*, 4 N. Y., (Comst.,) 349. The right of way was acquired under the statute—the charter of the defendant. Held that the defendant acquired the title to the lands. The action was brought to recover the value of oxen killed by defendant's trains.

VI.  ROTHROCK, J., concurs in the foregoing conclusions, upon the grounds that, in his opinion, the railroad company

**THE SAME.** did not acquire the right, under the deed, to remove the sand for the purpose of building a round house at a junction with another road owned by defendant. He does not deem it necessary to inquire whether such a right would be acquired by condemnation of the right of way under the statute, or by grant of the right of way in the language of the statute, pertaining thereto. He is of opinion that, under the deed executed for the right of way, the railroad company was authorized to take possession of all the land covered by the grant, and inclose the same with fences. If that were done, the land-owner would have no right to interfere with the possession. He could not rightfully enter upon the premises for any purpose. He could require a farm-crossing to be made for his convenience, and over it could cross the railroad. But he could only go on the right of way by committing a trespass in tearing down the fences. In his opinion, the railroad company having the right to take actual possession of the whole width of the right of way, such possession is exclusive; and, so long as it does not remove the sand or earth for any purpose not authorized by the law, or by the grant, the land-owner cannot enter upon the land to remove sand, or for any other purpose. He concurs in the conclusion that as it is not shown by the record that the right of way was inclosed, the plaintiff was not a wrong-doer in taking the sand therefrom.

VII. Upon the trial the plaintiff offered in evidence the second count of defendant's answer, for the purpose of show-

**2. EVIDENCE: admission of: error without prejudice.** ing, as we understand it, that defendant is the successor of the railroad company to which plaintiff conveyed the right of way, and that the sand for which suit is brought was taken from plaintiff's land occupied by the right of way. These matters were alleged in the petition and admitted in defendant's answer, and proof thereof was not required. Therefore, if it was error to admit the count in evidence, it was without preju-

dice to defendant, being simply the admission of incompetent evidence to prove a fact admitted by the pleadings.

VIII.    The  evidence  tended  to  show  that  plaintiff's meadow was destroyed by a fire set out by defendant; that

**3. RAIL-ROADS; destruction of meadow by negligent fire: measure of damages.** is, that the roots of the grass were so burned that the meadow would not produce grass for mowing. The court instructed the jury that plaintiff is entitled to recover as damage the cost of restoring the meadow to as good condition as it was before the fire. The instruction is correct.   A meadow is in the nature of a permanent improvement, and is not like annual crops.   Its value is largely based upon the fact that it possesses this character, and is not to be planted each year.   It is evident that plaintiff could not be fully compensated for his loss unless allowed for the value of the meadow, and no more just or reasonable way of determining that value can be suggested than by inquiring as to the cost of restoring it.   But counsel for defendant insist that plaintiff, under the instruction, will receive the value of a new meadow, when he lost an old one.   But we think the instruction provides against this by directing the jury that plaintiff should receive pay for restoring the meadow to as good a condition as it was before the fire.   If a new meadow would be more valuable than the old one, its condition would be better than the old one.   But the jury are not directed to allow plaintiff the value of a better meadow.

We have considered all questions discussed by counsel, and reach the conclusion that the judgment of the circuit court ought to be

AFFIRMED.