# CHARLESTON.

The White Flame Coal Company v. Emma Burgess *et al.*

Submitted March 9, 1920.   Decided March 16, 1920.

1. Mines and Minerals—*Requisite to Obtain Title to Coal in Tract of Land Stated.*

    To obtain the title to all of the coal in a tract of land, under the law of title by adverse possession, by means of exclusive, open, notorious and hostile operation of a single mine on the land, it is essential that such possession be taken and held for the requisite period of time, under color of title to the coal. (p. 19).

2. Same—*Deed Accepting Mineral Rights Reserved by Any Grantors Heretofore Excepts Minerals Previously Excepted by Conveyances of Land by Original Grantor and Those Succeeding His Grantee in Ownership of Surface.*

    An informal deed purporting to convey one or more tracts of land, and closing with a clause warranting the title, reserving a vendor's lien on the land to secure payment of purchase money and saying, between the warranty and the reservation provisions, "excepting, however, that they, (the grantors), do not undertake to convey any mineral rights that were reserved by any of the grantors heretofore," excepts from its operation minerals previously excepted by conveyances of the same land by the original grantor thereof and others succeeding his grantee in the ownership of the surface. (p. 20).

3. Deeds—*Exception May be Made in Part of a Deed.*

    An exception may be made in any part of a deed, by the use of terms expressing intent to effect it. (p. 20).

4. Same—*Construction of Informal Deed is to be Based on All its Terms, Regardless of Technical Rules.*

    The interpretation of an informal deed is based upon all of its terms, provisions and parts unfettered by any technical rules or limitations, just as is that of an ordinary contract, a will or a statute. (p. 21).

5. Deeds—*Intention Indicated by an Unnecessary Inference or Implication Will not Prevail Over an Intention Expressed in Words.*

    Ordinarily, in the interpretation of a deed or other instrument, intention indicated only by an unnecessary inference or

implication, is not allowed to prevail over a different intention expressed in words.   (p. 21).

6. Same—*Rule of Construction Most Strongly Against Creditors is Applicable Only in Case of Ambiguity.*

The rule that a deed is to be construed most strongly against the grantor, is applicable only in the case of a doubt as to its meaning, insoluble by the application of any other rule of interpretation.   (p. 21).

7. Taxation—*Entry of Lands for Taxation and Payment of Taxes Thereon is Presumed.*

There is a presumption of entry of lands for taxation and payment of the taxes thereon, in favor of the owner and persons claiming under him, which stands until overthrown by proof to the contrary.   (p. 22).

8. Same—*Burden of Proof of Forfeiture by Nonentry or Taxation Rests on One Defending on That Ground.*

In the case of a defense to an action of ejectment, based upon the theory of forfeiture of the plaintiff's title, by reason of nonentry of the land upon the land books, for taxation, and outstanding title in the State in consequence of the forfeiture, the burden of proof of such forfeiture and of all facts necessary to establishment thereof, including location of the land, when it is material, rests upon the defendant.   (p. 22).

9. Same—*Error in Entry of Land or Coal for Taxation is Not a Valid Basis of a Claim of Forfeiture of the Title to the State if the Taxes Have Been Paid.*

Neither an error in the quantity of a tract of land or coal, made in the entry thereof for taxation, be it one of excess or deficiency, nor the entry of two or more non-contiguous tracts as one, constitutes a valid basis of a claim of forfeiture of the title to the State, if the taxes imposed by such irregular assessment have been paid, as they are presumed to have been in the absence of proof to the contrary.   (p. 22).

Error to Circuit Court, Kanawha County.

Ejectment by the White Flame Coal Company against Emma Burgess and others.   Judgment for defendants upon a directed verdict, and plaintiff brings error.

*Reversed, verdict set aside, remanded.*

*A. M. Belcher* and *J. B. Jones,* for plaintiff in error.

*W. E. R. Byrne,* for defendants in error.

POFFENBAGER, JUDGE:

The two principal inquiries arising on this writ of error to a judgment in an action of ejectment to recover the coal in a certain tract of land, rendered on a verdict found for the defendants by direction of the court, are whether they have acquired title to it by adverse possession, and whether the title of the plaintiff has been forfeited to the State, by reason of non-entry thereof for taxation.

While the declaration calls for the coal in two tracts of land, the areas of which are not stated, the controversy seems to be limited to the coal in a tract containing about 66 acres, and composed of parts of said two tracts. The plaintiff deraigns its title regularly from the Commonwealth of Virginia, commencing with a grant to Samuel Hollingsworth, of a tract of land containing 47,000 acres and known and designated as the "Sheba" tract. It includes several prior surveys which were excepted and have been located by the plaintiff in its evidence. The "Sheba" tract passed mediately from Hollingsworth to Matthias Bruen and thence to his son, A. M. Bruen, who, from time to time, conveyed many portions of it to divers persons, but generally, if not always, excepted, in some form, the coal and iron in the lands, by his conveyances. By a deed dated, Feby. 1, 1854, he con-veyed a tract containing 296¾ acres to Hutchinson McDaniel, and retained the title to minerals in it, by an exception made in the following terms: "Excepting and reserving all the coal and iron Minerals found in and upon said land to the said Alexander M. Bruen, his heirs and assigns, with rights of way of ingress and regress necessary to the full enjoyment and use of this reservation, and granting to the said Hutchinson McDaniel License to use such Quantities of said minerals as may be necessary for his household and domestic purposes." The coal in question is under a part of that tract, the title to which, except as to the minerals therein, is admittedly vested in the defendant Emma Burgess. A portion of it, containing 68 acres, was owned, as to the surface, by August Copen and wife and the Kanawha Valley Bank, in 1891, and they conveyed it to Lucy E. Rock, by a deed containing this exception: "Subject to the reservations heretofore made of coal, iron and other minerals in the deeds

from A. M. Bruen and others, under which said Bank remotely claims, and. reference is here made to the said deeds for a more particular statement of said reservation, it being the intention of this deed to convey such land to the third party, (Lucy E. Rock), as the same was granted by said Bruen and others and subject to the reservation aforesaid." ⋅ The record and briefs are so incomplete and disconnected in narration of the facts, that it is difficult, if not impossible, to get from them, a clear comprehension of the history of Mrs. Burgess' title. It seems to be admitted, however, that all of the deeds under which she claims down to one dated, March 23, 1907, by which Lucy E. Rock and her husband conveyed a 47 acre tract, part of a 68 acre tract, and a 19 acre tract, to J. L. Burgess, her husband, clearly excepted the coal and iron, either in express terms or by references to prior exceptions and adoption thereof. If the deed of March 23, 1907, contains an exception, it is either in the warranty clause or immediately follows it. The last clause in it reads as follows: "And the said parties of the first part do hereby covenant that they will warrant generally the title to the property hereby conveyed, excepting, however, that they do not undertake to convey any mineral rights that were reserved by any of the grantors heretofore and they do hereby reserve a vendor's lien upon the same for the unpaid purchase money." By a deed dated, April 29, 1911, J. L. Burgess and wife conveyed said two tracts to Calvin Jones, and the last clause in that deed says: "And the said parties of the first part do hereby covenant with the said party of the second part that they will warrant generally the property hereby conveyed, excepting, however, the mineral titles that has heretofore been excepted by grantors or vendors of aforesaid land." Calvin Jones, by a similar deed dated, Sept. 26, 1913, conveyed both tracts to Emma Burgess, his daughter, the wife of J. L. Burgess. The last clause of that deed is the same in effect, if not in terms, as in the deed from Burgess to Jones.

Upon the interpretation of the three deeds last mentioned, depends the important inquiry, whether or not Emma Burgess, her husband and her father under whom she holds title, had any color of title. to the coal in place, that she can invoke in support of their alleged continuous, visible, open, notorious and actual possession of the coal by means of mining thereof for commer-

cial purposes, from the year 1907 until the year 1917, the date of the commencement of this action. If, properly interpreted, they, on their faces, granted the coal, and there was such possession as is claimed, the defendant Emma Burgess has perfect title to the whole thereof, by adverse possession of part of it, under color of title to the whole thereof. On the other hand, if any of them did not do so, she has no title to the coal. None of them actually passed such title, for none of the grantors had it, but the requisite possession of part of it under deeds purporting to pass title to all of it, vested such title, if there were such deeds and such possession.

The clause quoted from the deed of March 23, 1907, is not limited to the subject of warranty. Besides warranting title, it reserves a vendors lien. Between the portions relating to these two subjects, there is language pertaining to previously reserved mineral rights by "the grantors heretofore," the grantors in former conveyances of the same land. Though this language follows the language of warranty, it does not in terms purport to qualify or limit the warranty. It says "they," the parties of the first part, "do not undertake to convey any mineral rights that were reserved" by previous conveyances. Nothing but its position and the use of the word "excepting," making an apparent verbal connection between it and the warranty, can be relied upon as indicating purpose to make it limit or qualify the warranty. Mere inference or implication of such intent arising from the connection and juxtaposition of terms is not a necessary one and it is inconsistent with the words themselves, which plainly and expressly disavow intent to convey the minerals. Ordinarily, intention disclosed, if at all, by such an inference or implication, is not allowed to prevail over a different intention expressed in terms. *Berry* v. *Humphreys,* 76 W. Va. 668, citing several well considered cases. This is language of exception from the operation of the deed, not merely from the warranty clause. Its logical, and, therefore, its legal, effect is the same as if the grantor had in terms excepted or reserved the minerals excepted in previous conveyances. An exception by a grantor having title, is a mere withholding of title to part of the property described in the deed. Hence, if he declares in the deed that he does not grant or undertake to convey part of such prop-

erty, he excepts the designated part. The form of an exception is immaterial. It may be effected by the use of any words expressing intention to except. *Freudenberger Oil Co.* v. *Simmons,* 75 W. Va. 337, syl. pt. 7. An exception may appear in any part of a deed. It may be inserted between the habendum and the warranty and in the same paragraph with the former. *Id.*

Lacking an habendum clause, and embodying three subjects in one compound sentence, this is an informal deed, the interpretation whereof involves consideration of all of its parts and is free from the limitations of technical rules. All of its parts express primary intention. *Freudenberger Oil Co.* v. *Simmons,* cited. There are few, if any, instances in which any part of a deed other than the habendum has ever been held to express secondary intent, or to perform the function of mere explanation or definition, in the absence of an expression or a necessary implication of such intention. An exception found in any part of a deed eliminates from the granting clause so much of what would otherwise pass by its terms, as is embraced in the terms of the exception, and the deed, as a whole, passes what is included in the terms of the grant, less what is found to be within those of the exception. Always and everywhere, the interpretation of such a deed as the one here involved is based upon the terms of all of its provisions and parts unfettered by any technical rules or limitations, just as is that of a simple contract, a will or a statute. *Uhl* v. *Ohio River R. Co.,* 51 W. Va. 106; Devlin, Deeds, 3rd Ed. sec. 844a.

The familiar rule that a deed is construed most strongly against the grantor, in case of doubt, if applicable between these parties who are not grantor and grantee, would not apply to the deed, for it may be resorted to only when, after application of all other rules, a doubt still remains. 2 Kent's Com. 556; Hammon, Con., sec. 415; 13 Cyc. 609.

In view of the insufficiency of this deed for color of title and the period of time elapsing between its date and that of the next one, nearly four years, it is immaterial whether the subsequent ones, properly construed attempt to pass title to the coal or not; for the possession, if any, would not be long enough to confer title by an adverse holding. The two later deeds are invoked, however, for the proposition that all three are color of

titlc for the defendants, because they construed them as passing the title to the coal and treated them as having done so, in mining the coal. This position has no legal foundation. "Adverse possession under and by virtue of a deed is limited to the premises actually covered thereby." 1 Cyc. 1134; *Marshall* v. *Stalnaker,* 70 W. Va. 394.

The burden of proof of forfeiture of the Bruen title by reason of non-taxation was on the defendants. *Wildell Lumber Co.* v. *Turk,* 75 W. Va. 26; *Sult* v. *Hockstetter Oil Co.,* 63 W. Va. 317 A defense made on the ground of forfeiture of the plaintiff's title is affirmative in its nature. The defendant undertakes to show outstanding title in a third person, a stranger, the State. The defendants have clearly failed to discharge that burden. They have not proved the forfeiture they claim. After having made numerous conveyances of tracts of surface, Bruen caused himself to be charged on the land books, for the year 1868, with lands in fee, amounting to 25,849½ acres, and with a mineral acreage of 20,870, and the latter assessment was carried on the land books, in the name of Bruen or his heirs or devisees, until 1917. The 296¾ acre conveyance of surface to McDaniel occurred in 1854. The surface was divided by numerous conveyances into separate tracts, but the minerals were not. It is plain that Bruen properly endeavored to enter all of the reserved minerals as a single tract. The surface of the 296¾ acre tract was assessed in the name of McDaniel from 1855 to 1864 inclusive. Then it was apparently charged in the name of Sarah Ramsey, from 1865 to 1868 inclusive. In the latter year, she conveyed it to Greenbury Slack and it was taxed in his name, down to 1872, when he conveyed part of it to August Copen. This tends to prove the 296¾ acre tract was not overlooked in taxation, and some of the mineral acreage was taxed to the Bruens, in the same district in which that tract lies, from 1882 down to 1917. But it appears that the Bruens had more than 20,870 acres of minerals, 23,877, for all of the period of mineral taxation or a large portion thereof. And on this fact is based the contention that the plaintiff must prove its small tracts of coal were within the 20,870 acres charged on the land books, under the rule enunciated in *Stockton* v. *Morris,* 39 W. Va., 432. That rule applies only to the

party bearing the burden of proof. *Cook* v. *Raleigh Lumber Co.,* 74 W. Va. 503; *Virginia C. & I. Co.* v. *Keystone C. & I. Co.* 101 Va. 723. Here the defendants carry the burden of proof on the question of the existence of an outstanding title in the State. If the particular part of the Bruen mineral tract, which belongs to the plaintiff, in the absence of forfeiture thereof, has been forfeited, and the issue depends in whole or in part on the location of that tract, the defendant must prove it, as in any other case of an attempt to defeat the plaintiff in an action of ejectment, by proof of an outstanding title.

A claim of forfeiture is asserted on the bare fact that the acreage taxed as minerals is too small, or that there is an excess of acreage owned above the acreage taxed. This claim is equally unfounded. The Bruens caused their coal to be assessed as a single tract, agreeably to the fact. In the taxation thereof, there was an error as to the quantity. In such case, there is no failure to enter the tract of land or any part thereof for taxation, within the meaning of the law. *State* v. *Cheney,* 45 W. Va. 478; Desty, Tax. 567. Under our tax laws, the subject of taxation, except in the case of a city or town lot, is the tract, not the acres composing it. If the error is an excess in quantity, the public benefits by it. The state gets more than belongs to it. If the error is one of deficiency, there is no doubt either an actual or potential remedy by back-taxation, wherefore the State suffers no serious injury in that event. There is absolutely no authority for the proposition that there is a forfeiture in either case, and it is utterly untenable from any point of view.

In connection with this contention, *Logan* v. *Ward,* 58 W. Va., 366, is invoked, but there is no similarity between it and this case. In the former, the titles were hostile, and the effort was to make taxation of three specific tracts under one title save nearly twenty-five times as much land under another.

Nor does the fact that the Bruens conveyed some of their land in fee prove anything material. Though only contiguous lands can properly be assessed together, irregular taxation, if there was any, does not forfeit title. *Webb* v. *Ritter,* 60 W. Va. 193; *Bradley* v. *Ewart,* 18 W. Va. 598; *Whitham* v. *Sayers,* 9 W. Va. 671; *Lohrs* v. *Miller,* 12 Gratt. 452. If two or more non-contigu-

ous tracts are assessed as one and the taxes paid, there is manifestly no forfeiture.

In view of these principles and conclusions, the trial court's direction of a verdict for the defendants is an obvious error. It is equally clear that the court should have given some one of the three peremptory instructions asked for by the plaintiff.

The judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed, verdict set aside, remanded.*