# CHARLESTON.

William A. MacCorkle v. City of Charleston *et als.*

(No. 6049)

Submitted March 13, 1928.    Decided April 10, 1928.

1.  Dedication—*Dedication of Alley Cannot be Inferred From Filing Map Defining Alley and Conveyance of Lots With Relation Thereto Specifying Alley is for Abutting Lot Owners' Use.*

    The dedication of an alley to public use cannot be inferred from the filing of a map defining the alley and the conveyance of lots with relation thereto, when the conveyance specifies that the alley is for the use of the abutting lot owners. (p. 397.)

    (Dedication, 18 C. J. § 55.)

2.  Same—*Use by Public of Private Alley in Common With Owners Thereof Does Not Show Dedication or Vest Any Right in Public (Code, c. 43, § 3).*

    The mere use by the public of a private alley in common with the owners of the alley does not show a dedication thereof to public use, or vest any right in the public to the way. (p. 399.)

    (Dedication, 18 C. J. § 120.)

3.  Boundaries—*Conveyance of Land on Public or Private Way Carries by Inference Fee to Center of Way, Unless Such Inference is Excluded by Express Declaration or Equivalent Thereof.*

    A conveyance of land bounded on a way, either public or private, carries with it by inference of law the fee to the center of the way as part of the grant, unless the inference is excluded by express declaration or something equivalent thereto. (p. 400.)

    (Boundaries, 9 C. J. §§ 83, 107.)

4.  Taxation—*Private Alley is Not Forfeited to State Because Not Charged Integrally on Land Books; Assessment and Payment of Taxes on Abutting Lot Prevents Forfeitures of Alley Belonging to Lot Owners to State.*

    Such private alley is not forfeited to the state because not charged integrally on the land books. Assessment of and payment of taxes on the abutting lots prevents a forfeiture of the alley. (p. 404.)

    (Taxation, 37 Cyc. p. 1548.)

5.  Eminent Domain—*Equity Has Jurisdiction to Enjoin City From Paving Private Alley.*

> Point 3 of the syllabus of *Jackson* v. *Railroad Company,* 63 W. Va. 18, on equity jurisdiction, applied.   (p. 405.)
>
> (Eminent Domain, 20 C. J. § 533.)
>
> (Note:   Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Kanawha County.

Suit by William A. MacCorkle against the City of Charleston and others for an injunction.   From a decree dissolving a temporary injunction and dismissing his bill, plaintiff appeals.

*Reversed; injunction perpetuated.*

*Poffenbarger, Blue & Dayton* and *MacCorkle, Clark & MacCorkle,* for appellant.

*Arthur G. Stone, Philip H. Hill* and *P. H. Murphy,* for appellees.

Hatcher, Judge:

The plaintiff herein appeals from a decree dissolving a temporary injunction restraining the city from paving an alley abutting on his property, and dismissing the bill.

By a deed dated 1884, the heirs of Wm. Goshorn, Sr., partitioned their property on the corner of State and Summers Streets in the City of Charleston into seven lots, with the alley in question running from State Street between the lots to the opposite property line.   A map was recorded with the deed on which the alley is designated "Alley 12 ft. Wide". Plaintiff is now the record owner of Lots Nos. 1 and 7.

The city takes the position that the alley is public because of dedication and acceptance, prescription, and section 3, Chapter 43, Code.   It also contests the right of plaintiff to maintain this suit on the ground of non-assessment and non-payment of taxes on the alley, and lack of equity.

In support of its position, the city introduced evidence showing that when State Street was sewered and paved, the cost of the portion abutting on the alley was not assessed against any property owner, but was paid for by the city;

that a sewer put in the alley by an owner of one of the lots abutting thereon was graded by the city engineer; that the alley as such has not been entered for taxation; that Lot No. 7 has been off the land books for more than twenty years; that a small amount of work was done on the alley by the city about fifteen years ago, such as draining and filling mud holes; and that a telephone pole stood in the alley for a number of years. Five witnesses testified that the alley has been open, and used generally by the public for many years.

The plaintiff, W. F. Goshorn and H. D. Goshorn, who were parties to the partition deed, testified that the alley is private; and that it was made for the sole use and convenience of the lot owners and their tenants, and has not since been used otherwise to their knowledge. The plaintiff introduced in evidence a letter written by him in 1922, to an adjoining proprietor giving him permission to use the alley. He further testified that for many years following the partition, gates and bars were maintained across the alley, which finally rotted down about eight or ten years ago; that about twenty years ago he and a tenant utilized the alley for a time as gardens; that his property did not abut on State Street and he had no notice of its paving; and that he had never seen any work done by the city on the alley. A tenant who had occupied one of plaintiff's lots for twenty-three years, testified that gates were across the alley when she first moved there, but had disappeared sometime afterwards, since when people generally had used the alley.

In an unbroken line of decisions this Court has held that an owner of land may dedicate it to public use by acts and declarations without an express grant. But in such case the conduct relied upon to show the *animus dedicandi* must be deliberate and unmistakable, active rather than passive, and "the result of intention rather than inattention". *Pierpoint* v. *Town of Harrisville*, 9 W. Va. 215; *Miller* v. *Town of Aracoma*, 30 W. Va. 606; *Miller* v. *City of Bluefield*, 87 W. Va. 217. In fact, the acts relied upon must be inconsistent with any purpose but dedication. *Morlang* v. *City of Parkersburg*, 84 W. Va. 509. As stated in *DeGrilleau* v. *Frawley*, 84 La. Ann. 184, the proof of dedication should be so clear "as to

exclude any other reasonable hypothesis''. The burden of furnishing such proof is on the party who alleges the dedication. *Mason City Co.* v. *Town of Mason,* 23 W. Va. 211; 18 C. J., p. 93, sec. 101. The evidence relied on by the defendant does not meet these rigid requirements. The contention of dedication is based on the facts that the Goshorn heirs caused their property to be surveyed and plotted, recorded the plat, made reference to the plat in conveyances *inter sese;* and did not deny the public the use of the alley. The defendant relies upon *Riddle* v. *Town of Charlestown,* 43 W. Va. 796; *Cook* v. *Totten,* 49 W. Va. 177; *Edwards* v. *Land Co.,* 56 W. Va. 43; and *City of Elkins* v. *Donohoe,* 74 W. Va. 335. In each of those cases the land owner caused his property to be surveyed and plotted into lots, etc., for the purpose of sale, and sold lots pursuant thereto. The situation in this case is quite different. Here the land was surveyed and plotted, not for sale, but for partition and occupancy. The defendant contends that this partition differs in no essential particular in that respect from a sale of lands. A discussion of this point is beside the mark, as its decision does not depend on inferences of intent or presumptions of law based upon the situation of the parties. The partition deed definitely settles the purpose of laying off the alley. It states: ''Each of said grantees is to have full use and enjoyment of the said alleys, so far as the same are adjacent to their respective lots, and full and free right of ingress and egress through and over said alleys to and from the public streets.'' This is an express dedication to private use, and excludes the presumption of dedication to public use, which might otherwise arise from the recordation of the plat. This case parallels the cases of *R. R. Co.* v. *City of Cleveland,* 1 Ohio Dec. 1; *City of Baltimore* v. *White and Shipley,* 62 Md. 362; *Bowers* v. *Mfg. Co.,* 58 Mass. 332, 339; *Fischer* v. *Laack,* 76 Wis. 313; *Hall* v. *McCoughey,* 51 Pa. 43; *Ins. Co.* v. *Littlefield,* 67 Ill. 368; *Talbott* v. *R. R. Co.,* 31 Grat. 685. In those cases (several of which involve partition deeds) alleys or passageways were set apart expressly for the use of abutting lot owners, and it was held that there was no dedication to public use. See also 9 A. & E. Ency. Law, p. 56; 18 C. J., p. 66, sec. 55.

Witnesses who stated that the public used the alley, admitted that they did not know personally the people whom they saw using it, and with the exception of some school children, did not know but what such people were hucksters, icemen, or others having business with the owners of the lots or their tenants.   It is not necessary, however, to weigh this proof carefully, as it is settled law that when once the private character of a way is established, mere use by the community 'is held to be permissive and in subordination to use by the owner.  ''Where a way is laid out and used as a private way, the mere fact that the public also makes use of it without objection from the owner will not make it a public way.''  Elliott, Roads and Streets, (4th ed.) sec. 5.   See also sec. 29, and in addition to the many cases cited by this author, see Washburn, Easements and Servitudes, 4th ed.) p. 213, sec. 13; 18 C. J., p. 105, sec. 1201; *Brinck* v. *Collier,* 56 Mo. 160; *White* v. *Bradley,* 66 Me. 254, 258-9; *City of Chicago* v. *Borden,* 190 Ill. 430, 444-5; *Banking Co.* v. *City of Atlanta,* 118 Ga. 486, 489, 490; *Parrott* v. *Stewart,* 65 Ore. 254, 261; *Hall* v. *McLeod,* 59 Ky. 98, 101-2; *Davis* v. *Ramsey,* 50 N. C. 236, 241; *Speir* v. *Town of New Utrecht,* 121 N. Y. 420, 430-1; *Shellhouse* v. *The State,* 110 Ind. 509, 513; *Irwin* v. *Dixion,* 9 Howard (U. S.) 10, 32-3.   These cases proceed on the theory that when a private way is open, it is open either for the convenience, or by the permission of the owner; that the public, finding the way open, uses it without any claim of right but merely because it is open; that the owner indulges the public's use rather than be captious; that such use is in common with his own; and that he is not to be penalized for accommodating the public.  Therefore, they say, the vital elements of abandonment by the owner, and adverse user by the public, respectively, upon which an implied dedication or prescription must rest, are lacking, and ''no length of time during which property is so used can deprive an owner of his title''.  *Irwin* v. *Dixion, supra,* p. 33.

The contention is also made that because the public has had access to the alley and has not been denied the right to use it, and the defendant has made some expenditures on it, the alley has become public by virtue of section 3, Chapter 43 of the

Code. If this contention were sustained, all neighborhood accommodation over private roads would cease. For if it were understood that the passage of neighbors through one's property over a way prepared by one for his own use, was likely to result in the way becoming public, a discontinuance of that courtesy would immediately follow. We cannot conceive that the Legislature contemplated such a result and we hold that the section does not apply to a purely private way which is used by the public at the sufferance of the owner. To hold otherwise would violate the constitutional inhibition against taking private property for public use without just compensation to the owner.

A discussion of defendant's claim of its acceptance of the alley is unnecessary, since without a dedication there can be no valid acceptance.

It is not shown that the owners of the alley knew of any expenditures of public money thereon. Their title is accordingly unaffected thereby. *Morlang* v. *City of Parkersburg, supra,* p. 517.

The alley has never been assessed integrally on the land books, and no taxes have been paid upon it as such. The defendant contends that if the alley is not a public alley, it was the duty of the owners to have it assessed and pay the taxes thereon; that their failure to do so has resulted in its forfeiture to the State; and that the plaintiff is without right or title to maintain this action. The plaintiff replies that under the general law the title of abutting lot owners extends to the center of the alley; that the lots have been assessed and the taxes paid thereon (with the exception of Lot No. 7); that the value of the alley has been included in the valuation of the lots for assessment, and that therefore no forfeiture has occurred.

Kent says: "The established inference of law is that a conveyance of land founded upon a public highway carries with it the fee to the center of the road as part and parcel of the grant. The idea of an intention in the grantor to withhold his interest in a road to the middle of it, after parting with all his right and title to the adjoining land, is never to be

presumed. * * * It would require an express declaration or something equivalent thereto, to sustain such an inference.'' Kent's Commentaries (14th ed.), Vol. 3, p. 433-4. Dembitz "heartily agrees" with the doctrine of Kent. Dembitz on Land Titles, Vol. 1, sec. 11, p. 75. The defendant says, however, that its contention is within this rule because the descriptions of most of the lots call for a *line of the* alley, and *Clayton* v. *County Court,* 58 W. Va. 243, holds that a call in a deed for *the line* of a private road as a boundary of a tract, is equivalent to an express retention of the road, and the deed passes to the grantee no title to the fee in any part of the road. The decision in that case is based on the fact that the description called for *a line* of the road rather than for *the road.* That decision may seem very technical, but it is not without supporting authority. Quite a number of courts have seen fit to draw nice distinctions in the implication of certain words of calls, in determining whether the conveyance stops at a line of a street, or extends to the center of the street. For example, where a description calls for *a highway* or uses such expressions as "bounded by", "on", "upon", or "along" a highway, it has been held to extend the conveyance to the center of the highway; while on the other hand, if the description merely calls for *"a line"* of the highway or to run *"with the line",* or "by the side" of the highway, some courts have held that the grantee's title stops with the line. 9 C. J., p. 199-201.

The seller of land can ordinarily have no object in retaining a narrow strip along a line of his grant, particularly a strip subject to the rights of others. The strip is of no value when separated from adjoining property. The grantor's use of and concern for it ends with his conveyance, unless some fortuitous circumstance later makes it worth while. The retention of the strip may seriously retard the improvement and further alienation of the adjoining property, especially if the strip is on a private way. Its proximity to his purchase makes the strip of direct and substantial value to the grantee. The rule as stated by Kent is therefore indispensable to prevent rapacious demands of former occupants of lands abutting on highways, and quiet the title of present claimants thereto.

The rule is compelled to "uncontrovertible public policy". *White* v. *Jefferson,* 110 Minn, 276, 283. See also 9 C. J., p. 197, sec. 84.

The descriptions in deeds are usually prepared by surveyors who compose the calls with reference to the lines as they exist on the ground. Surveyors are not informed of or concerned with the fastidious refinement in the use of language favored by some courts. The parties to deeds almost invariably have the general notion that the fee in a road passes to the grantee of an abutting lot by force of an ordinary conveyance. Hence, they see no reason for preciosity. The rule was designed to meet just such a situation and to supplement the absence of specific grant. It therefore seems that a rule so salutory should be furthered with liberal construction—not fettered by literal discrimination. Many well considered cases support this view. "There is no doubt whatever as to the existence of the general rule; but it is thought by the plaintiff in error that where the deed calls for a particular *side* of a street the case is taken out of the rule. In our opinion this is a circumstance entirely too insignificant to produce a result so inconvenient and so contrary to the practice of the people. * * * A rule founded upon policy, and tending to guard against inconveniences of the most alarming character, ought not to be frittered away by distinctions founded on differences in · phraseology, which might readily escape attention. The paramount intent of the parties, as disclosed from the whole scope of the conveyance, and the nature of the property granted, should be the controlling rule." *Paul* v. *Carver,* 26 Pa. 223, 225-6. "Under ordinary conditions, nothing short of express words of exclusion will prevent the street in front of the premises conveyed from passing." *Salter* v. *Jonas,* 39 N. J. L. 469. Accord: *Low* v. *Tibbetts,* 72 Maine 92; *Schneider* v. *Jacob,* 86 Ky. 101, 107-8; *Peck* v. *Denniston,* 121 Mass. 17; *Warbritton* v. *Demorett,* 129 Ind. 346; *Silvey* v. *McCoal,* 86 Ga. 1, 3; *Moody* v. *Palmer,* 50 Cal. 31, 37; *Ry. Co.* v. *Brown,* 23 Fla. 104, 118; *Reed's Petition,* 13 N. H. 381; *Champlin* v. *Pendleton,* 13 Conn. 23. The fallacy of placing so much dependence on the words in such calls, is well demonstrated by the deed in this case. Here, the bounds of each

lot on the alley should have been uniform; yet the calls of some lots are for *a line of the alley*, and of others for *the alley*. The lack of formula in these descriptions shows that the parties attached no special significance to the language used.

The same general rule applicable to highways is, by the weight of authority, applied to private ways and alleys. ''The rule is the same whether a deed calls for a public highway or opened private alley as a boundary, it passes title to the grantee as against the grantor to the middle line of the alley.'' *Saccone* v. *Trust Co.*, 224 Pa. 554. Accord: 9 C. J., p. 25; Devlin on Real Estate (3rd ed.), Vol. 2, sec. 1025-a; 4 A. & E. Ency. Law, p. 816; *Lindsay* v. *Jones*, 21 Nev. 72; *Freeman* v. *Sayre*, 48 N. J. L. 37; *Jacob* v. *Woolfolk*, 90 Ky. 426; *Hennessy* v. *Murdock*, 107 N. Y. 317; *City of Richmond* v. *Thompson's Heirs*, 116 Va. 178. The rule is not affected by a clause providing for the common use of the alley by the grantee and others. Devlin, *supra*, sec. 1025-d.

A well considered case on this subject is *Clark* v. *Parker*, 106 Mass. 554, where it was held: ''In a partition by order of court, of real estate held in common, a strip of land was appropriated in the middle of the estate 'as a street or passageway to be held in common and undivided by the parties, abutters thereon, their heirs and assigns', and all the lots set off were bounded on this passageway. Held, that the fee in the soil of the strip did not remain in common, but became parcel of each of the lots set off.'' In the opinion, the court said:

''In the construction of deeds, where lands are bounded on or by a way, either public or private, the law presumes it to be the intention of the grantor to convey the fee of the land to the centre of the way, if his title extends so far. This presumption is of course controlled, whenever there are words used in the description showing a different intention. But it has been held that giving measurement, in the deed, of side lines, which reach only to the outer line of the way, are not alone sufficient to overcome it. *Phillips* v. *Bowers*, 7 Gray 21. *Fisher* v. *Smith*, 9 Gray 441. *Codman* v. *Evans*, 1 Allen 443. This rule of interpreta-

tion applies, with more force, to a return of com-
missioners of partition, which has been confirmed
by the court, when the way located by them is
wholly upon the land which by the warrant they
are required to divide.  The return itself here shows
that the commissioners intended to perform the
whole duty required, so that the parties should
not be left tenants in common of any part of the
original estate.  The difficulty arises from the
statement that the strip of land appropriated for
a street or way was to be held in common and un-
divided, by the abutters thereon.  But it was
clearly within their power to create a new incor-
poreal estate, such as a right of way over a part
of the land divided, to be enjoyed in common,
after the partition, by all the owners.  This they
did; and the tenancy in common which they created
and intended to describe was a tenancy only in
the easement, and not in the soil.  To hold other-
wise would make their proceedings imperfect.
The right of way secured was doubtless the main
consideration, for there could be little value in the
undivided interest of a tenant in common in the
strip of land subject to it, independent of the own-
ership of the adjoining lots.''

While the partition here was voluntary, the deed recites
that the owners of the property ''have agreed to make parti-
tion between themselves''.  This partition is therefore enti-
tled to the same presumption which arises in a partition by a
court, to-wit, that a complete division of the property was
intended.  We therefore hold that the fee in the alley passed
in severalty to the abutting lot owners.

The forfeiture of Lot No. 7 changes nothing but the owner-
ship of that lot.  It affects the rights of the other lot owners
no more than had it passed to a private individual instead
of the State.

Whether the dimensions of the several lots, as charged on
the land books, are equal to the entire area of the lots and
the alleys, is immaterial.  Bare deficiency in the area charged
does not ordinarily cause a forfeiture.  The alley was included
in the assessment of the lots.  *State* v. *Hines,* 103 W. Va. 180,
185; *Coal Co.* v. *Burgess,* 86 W. Va. 16, 23; *State* v. *Cheney,*
45 W. Va. 478; Cooley, Taxation (4th ed.), Vol. 3, sec. 1177.

The Parthian shot of the defendant is that no case for equitable interference has been made. *Jackson* v. *Big Sandy R. R. Co.*, 63 W. Va. 18, sustains the plaintiff's suit.

The decree of the circuit court is reversed and the injunction heretofore granted herein is perpetuated.

*Reversed; injunction perpetuated.*